[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 24-10705

Non-Argument Calendar

_____

LILLIE M. MIDDLEBROOKS,
Heirs of Shirley Hill Middlebrooks,

Plaintiff-Appellant,

*versus*

CITY OF MACON - BIBB COUNTY GEORGIA,
ERICA L. WOODFORD,
Individual capacity as Clerk, Superior Court
of Bibb County,
TAMIKA BURNETT,
Individual capacity as Chief of the Real Estate
Department, Macon-Bibb County Government,
MACON - BIBB COUNTY BOARD OF TAX ASSESSORS OFFICE,

2                    Opinion of the Court                    24-10705

TAX ASSESSOR ANDREA CRUTCHFIELD,
Individual capacity as Chief Appraiser,
Macon-Bibb County Board of Tax Assessors, et al.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Georgia
D.C. Docket No. 5:23-cv-00083-TES

_____

Before JORDAN, JILL PRYOR, and LUCK, Circuit Judges.

PER CURIAM:

In this lawsuit, Lillie Middlebrooks, purporting to proceed *pro se*, sued several local government officials and entities, bringing claims under 42 U.S.C. § 1983 and state law. After reviewing Middlebrooks's filings in the case, which appeared to the district court to be more sophisticated than filings typically submitted by *pro se* litigants, the court became concerned that an attorney may have been assisting Middlebrooks in the case without entering an appearance. The court twice ordered Middlebrooks to answer whether she was receiving assistance in preparing her filings. But she refused to answer. The court then dismissed her lawsuit for failure to comply with court orders. After careful consideration, we

conclude that the district court did not abuse its discretion. We thus affirm.

## I.

In 2015, Middlebrooks's mother, who owned real property on Villa Esta Circle in Macon-Bibb County, Georgia, died without a will. According to Middlebrooks, upon her mother's death, the Villa Esta property passed to Middlebrooks and her sister.

In June 2021, Middlebrooks went to the Macon-Bibb County Tax Commissioner's office to pay property taxes for the property. While at the office, Middlebrooks discovered that a quitclaim deed had been recorded for the Villa Esta property. According to the quitclaim deed, on January 7, 2021, Middlebrooks's mother had conveyed the property to Sherlice Morgan in exchange for one dollar.

Based on the quitclaim deed, the Macon-Bibb County Board of Tax Assessors and the Macon-Bibb County Tax Commissioner updated their records to reflect that Morgan owned the property. Both the Board of Tax Assessors and the Tax Commissioner then began to send Morgan communications about the assessed value of the property and the property tax owed.

After reviewing the deed, Middlebrooks determined that her mother's signature had been forged. After all, the deed purported to be signed by Middlebrooks's mother who had died more than five years earlier. Middlebrooks demanded that the Macon-Bibb County clerk's office, which had recorded the deed, cancel and expunge it. But the clerk's office refused to do so. She also sought

unsuccessfully to have the Board of Tax Assessors and the Tax Commissioner update their records to remove Morgan's name as the owner of the property.

Middlebrooks, proceeding *pro se*, filed a lawsuit against Macon-Bibb County, the Macon-Bibb County Board of Tax Assessors' office, the Macon-Bibb County Tax Commissioner's office, and several county officials. In Counts One through Three, she brought claims under 42 U.S.C. § 1983, alleging that various individual officials, the Board of Tax Assessors' office, and the Tax Commissioner's office had violated her Fourteenth Amendment right to be free from unwanted interference with property without due process when they recorded the quitclaim deed or relied on the deed to update ownership records. In Counts Four and Five, she brought claims under § 1983 against Macon-Bibb County. She alleged that the individual officials' unconstitutional acts were the result of the county (1) following unconstitutional customs or policies and (2) failing to adequately train its employees.[1] Middlebrooks sought damages and injunctive relief. She asked the district court to require the defendants to: (1) cancel the quitclaim deed, (2) update

---

[1] In Count Six, Middlebrooks raised state-law claims for breach of contract and promissory estoppel against the Tax Commissioner's office and Cheryl Lee, a supervisor in that office. The defendants moved for summary judgment on the state-law claims. In her responses opposing the summary judgment motion, Middlebrooks failed to present any argument on the state-law claims. The district court determined that Middlebrooks abandoned her state-law claims. Because Middlebrooks raises no argument on appeal challenging this determination, we address these claims no further.

their records to show that her mother still owned the Villa Esta property, (3) bring criminal proceedings against Morgan, and (4) evict Morgan from the property. In the complaint, Middlebrooks did not bring any claims against Morgan or name her as a defendant. The complaint was assigned to Judge Tilman Self, III in the Middle District of Georgia.

After the parties exchanged discovery, Middlebrooks and the defendants moved for summary judgment. Middlebrooks filed seven separate motions for summary judgment.

After reviewing Middlebrooks's submissions, the district court entered a show cause order. It stated that Middlebrooks purported to be proceeding *pro se*, noting that each of her filings included a signature block stating that she was proceeding *pro se*. But the court observed that the filings were more sophisticated than typical *pro se* filings, noting they "contain[ed] proper legal citations, headings, and arguments." Doc. 33 at 1.[2] The court expressed concern that Middlebrooks, who did not appear to be an attorney, may have been receiving assistance from an attorney. It stated that if an attorney was, in fact, assisting Middlebrooks without filing a notice of appearance, the attorney's actions likely ran afoul of the Georgia Rules of Professional Conduct.

The show cause order directed Middlebrooks to submit a response answering whether anyone had "materially assisted her in any way" in the preparation of her filings. *Id.* at 2. It warned that

---

[2] "Doc." numbers refer to the district court's docket entries.

failing to respond could constitute failure to comply with a court order and result in dismissal of the case. After issuing the order, the district court clerk made an internal entry on the court's docket sheet with a certification that a copy of the order had been mailed to Middlebrooks.

Upon receiving a copy of the show cause order, Middlebrooks called Judge Self's chambers. She stated that she would not be responding to the show cause order. She accused Judge Self of being racist for issuing the order to a Black litigant.

After the phone call, Middlebrooks did not submit a response to the show cause order answering whether she had received assistance. Instead, she filed a motion to disqualify Judge Self. In the motion, she asserted that the court lacked the authority to enter the show cause order and require her to disclose whether she was receiving assistance in preparing her pleadings. She accused Judge Self of being a "racist" and a "bigot" and of "implement[ing] Jim Crow's ideology." Doc. 39 at 6. She said that Judge Self was biased because he had not entered a similar order directed at the defendants' attorney who was white, which required the attorney to identify "who assisted the white attorney in drafting the white attorney's pleadings filed in this Court." *Id.* at 7. In the motion to disqualify, Middlebrooks also asserted that Judge Self had acted as "de facto defense counsel." *Id.* at 9. She attached to her motion a copy of the court's show cause order.

A few days after Middlebrooks filed the motion to disqualify, the court entered a second show cause order. It began by reviewing

why it had entered the initial show cause order. It noted that Middlebrooks's complaint and motions were structured and stylized in a way that was a "rarity in the [c]ourt's experience with" *pro se* litigants. Doc. 40 at 3. It emphasized that if "an unknown attorney" was "ghost-writing" for Middlebrooks, that attorney could be violating the Georgia Rules of Professional Conduct. *Id.* at 1. And it observed that if a non-attorney was drafting the filings, "that person could be guilty of the unauthorized practice of law." *Id.* at 2. If Middlebrooks had drafted the submissions on her own, the court stated that it would "gladly compliment[] her on her effort and natural skill." *Id.* at 3.

The court also addressed Middlebrooks's accusation of racism. It explained that it had not known that Middlebrooks was Black until she called chambers and disclosed her race. The court also defended the show cause order by noting that it had conducted similar inquiries in other cases to determine whether *pro se* litigants had received outside assistance.

After finding that Middlebrooks had failed to respond to the initial show cause order, the court gave Middlebrooks another opportunity to answer "whether an attorney or any other person assisted her in drafting her pleadings." *Id.* at 4. The court repeated its warning that if Middlebrooks "again refuse[d] to answer," it would "dismiss her complaint for failing to follow" a court order. *Id.* After issuing the second show cause order, the district court clerk made an internal entry on the court's docket sheet with a certification that a copy of the order had been mailed to Middlebrooks.

Rather than respond to the second show cause order, Middlebrooks filed a second motion to disqualify Judge Self. Based on the content of the two show cause orders, she "demand[ed]" that Judge Self be "immediately removed" from the case because the show cause orders "amount[ed] to Ku Klux Klan practices." Doc. 58 at 3. She attached to her motion an affidavit in which she criticized the show cause orders as "absurd, malicious, offensive, illogical, inept, overbearing, ridiculous, hostile, ill-mannered, senseless, foolish, sarcastic, illegal, evasive, antagonistic, disruptive, good-for-not[h]ing, ludicrous, reckless, inexcusable, tactless, and unprofessional." Doc. 58-1 at 12. She also attached both show cause orders to the motion.

After the parties fully briefed the various motions, the court entered an order addressing all pending motions in the case. It acknowledged that Middlebrooks had a right to proceed *pro se*. But the court explained that it also could inquire about whether a *pro se* litigant was receiving drafting assistance. It explained that the show cause orders were "never meant as an attack" on Middlebrooks and instead were an attempt to ensure that "a ghostwriting attorney or a non-licensed legal professional" was not "taking advantage of her and gaming the system." Doc. 62 at 11. The court concluded that recusal was not warranted and denied the motions to disqualify.

The court then concluded that the action should be dismissed with prejudice because Middlebrooks had failed to comply with court orders. It explained that it had given Middlebrooks two

opportunities to address its concerns that she might be receiving assistance with her *pro se* pleadings. But Middlebrooks refused to answer whether she had received assistance. Given her "repeated and stubborn defiance in complying with multiple orders," the court concluded that dismissal was warranted. *Id.* at 33 (alterations adopted) (internal quotation marks omitted).

Even though the court concluded that the action should be dismissed as a sanction, it proceeded to address the merits of the summary judgment motions. It concluded that the defendants were entitled to summary judgment. It determined that the individual defendants were entitled to summary judgment on the § 1983 claims alleging a due process violation. It explained that the individual defendants' actions consisted of recording the quitclaim deed, refusing to expunge it, and relying on it for tax-billing purposes. The court concluded that none of these acts "amount[ed] to a deprivation of property without due process of law under the Fourteenth Amendment." *Id.* at 42–43. And because there was no "underlying constitutional violation," the court also concluded that the entity defendants were entitled to summary judgment on the § 1983 claims against them. *Id.* at 50.[3]

This is Middlebrooks's appeal.

---

[3] Although the court concluded that Middlebrooks's § 1983 claims lacked merit, it noted that other avenues were available for Middlebrooks to challenge Morgan's quitclaim deed, including by bringing a lawsuit against Morgan for fraudulently drafting a deed or by filing a quiet title action.

## II.

We review for abuse of discretion a district court's dismissal of an action for failure to comply with a court order. *See Betty K Agencies, Ltd. v. M/V MONADA*, 432 F.3d 1333, 1337 (11th Cir. 2005). "Discretion means the district court has a range of choice, and that its decision will not be disturbed as long as it stays within that range and is not influenced by any mistake of law." *Id.* (internal quotation marks omitted).

## III.

When a plaintiff fails to comply with a court order, a district court generally has discretion to dismiss the action under either the Federal Rules of Civil Procedure or its inherent authority to manage its docket. *See Betty K Agencies*, 432 F.3d at 1337. Because a dismissal with prejudice is an "extreme sanction," it may be imposed only when the plaintiff engaged "in a clear pattern of delay or willful contempt" and "lesser sanctions would not suffice." *Id.* at 1337–38. Although these findings are essential, they may be made implicitly. *See Zocaras v. Castro*, 465 F.3d 479, 484 (11th Cir. 2006) (affirming dismissal when district court implicitly found that lesser sanctions would not suffice). We have recognized that "dismissal upon disregard of an order, especially where the litigant has been forewarned, generally is not an abuse of discretion." *Moon v. Newsome*, 863 F.2d 835, 837 (11th Cir. 1989).

Here, Middlebrooks clearly failed to comply with a court order. The district court twice directed her to answer whether

anyone else had helped her prepare her filings in the case. But she refused to answer the court's inquiry.

On appeal, Middlebrooks argues that she complied with the district court's show cause orders because her motions to disqualify showed that she was representing herself and did not have an attorney. She points to the signature block that appeared at the end of each motion, which noted that she was proceeding *pro se*.

We are not persuaded. In the first show cause order, the district court pointed out that Middlebrooks had submitted filings with signature blocks noting that she was proceeding *pro se*. But even with the signature blocks, the court stated that it was left with questions about whether Middlebrooks had received any outside assistance. After the court issued its first show cause order, Middlebrooks called the court's chambers and stated that she would not respond. She then filed the first motion to disqualify. Although the motion included a signature block that identified Middlebrooks as a *pro se* litigant, it was the same signature block that Middlebrooks had previously used. Given the court's question about whether Middlebrooks had received any assistance while proceeding *pro se*, we cannot say that she complied with the show cause order simply because she continued to use the same signature block.

In addition, after receiving the first motion to disqualify, the court entered the second show cause order explaining that Middlebrooks had not answered the court's inquiry. The court's second show cause order put Middlebrooks on notice that submitting a filing with a signature block stating that she was a *pro se* litigant did

not answer the court's inquiry. But Middlebrooks still refused to respond to the second show cause order and instead filed a second motion to disqualify that did not answer whether she had received assistance. Given this record, Middlebrooks did not comply with the district court's show cause orders.

Middlebrooks argues that the district court erred in concluding that she willfully failed to comply with its orders because there was "no proof" that the court ever mailed her the show cause orders. Appellant's Br. 46. Because Middlebrooks did not have an electronic filing account, she did not receive an email notice when the orders issued. But the record shows that the court mailed her the orders. The district court's docket includes internal notations reflecting that the clerk mailed her both show cause orders. In addition, Middlebrooks mentioned the first show cause order when she called Judge Self's chambers and attached the show cause orders as exhibits to her motions to disqualify. These actions plainly show that she received the orders.

Given that Middlebrooks willfully refused to comply with court orders, the district court did not abuse its discretion in dismissing the action. The district court expressly found that she had engaged in a clear pattern of delay or willful contempt and implicitly found that lesser sanctions would not suffice. The record supports these findings because Middlebrooks failed to respond to the show cause orders even though the district court gave her multiple opportunities to respond to its inquiry and warned her about the consequences of failing to respond.

24-10705                Opinion of the Court                13

Because we conclude the district court did not abuse its discretion in dismissing this action with prejudice, we affirm.[4]

**AFFIRMED.**

---

[4] Given this conclusion, we do not address the district court's summary judgment rulings.